UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:17-cr-00025-JAW |
| | ) | |
| | ) | |
| DERRICK A. COFFIN, | ) | |
| | ) | |
| Defendant | ) | |

## RECOMMENDED DECISION
## ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant's motion to suppress evidence obtained following a search of his residence on March 18, 2016. (Motion, ECF No. 28.) In particular, Defendant seeks to exclude evidence obtained as the result of the search of a laptop computer, a cell phone, and a secure digital (SD) card, which items law enforcement obtained during the search of Defendant's residence. Defendant contends the search of the items was unlawful because law enforcement officers did not have a warrant to search the items and because the officers lacked reasonable suspicion to seize and search the items.

Following an evidentiary hearing on the motion, and after consideration of the parties' arguments, I recommend the Court deny Defendant's motion to suppress.

### PROPOSED FINDINGS OF FACT

Based on the evidence presented at the hearing, which evidence includes the parties' stipulation (ECF No. 44), I recommend the Court find the following facts:

1. On March 3, 2006, Defendant was convicted in Maine state court of gross sexual

assault of a child under the age of 12. The state court sentenced Defendant to a 15-year term of imprisonment, with all but 8 years suspended. Defendant was also sentence to a 10-year period of probation to be served upon his release from prison.

2. On December 18, 2014, with Defendant's consent, Defendant's probation conditions were amended to provide that Defendant shall:

   Not view, listen to, or possess pornographic, sexually explicit, or provocative acts, performances, or materials in any form, and submit to random search of your person, residence, vehicles, and all other spaces and materials, including electronic equipment and storage and display mediums under your custody or control for evidence of such materials or activities.

3. On March 18, 2016, Defendant was subject to the conditions of his probation, as amended.

4. In March 2016, Detective Mark Fucile of the Lincoln (Maine) Police Department maintained an alias Facebook account in order to monitor activity and individuals in the area. As part of this effort, Detective Fucile noted a post from an individual named Derrick Beal. In the post, Mr. Beal asserted that a sex offender from Lincoln had hacked his Facebook account.

5. As the result of the post, Detective Fucile learned that Defendant was the offender to whom Mr. Beal referred. During a subsequent conversation with Detective Fucile, Mr. Beal reported that his girlfriend, Andrea Fowler, used to date Defendant and that Defendant had previously hacked Ms. Fowler's Facebook account. Mr. Beal provided Detective Fucile with Ms. Fowler's contact information.

6. Ms. Fowler told Detective Fucile that she dated Defendant for approximately two

months. She reported that she ended the relationship in March 2015 after she found Defendant in his vehicle in her driveway "touching himself" while watching child pornography on his phone. When she found him, Defendant asked Ms. Fowler if she wanted to watch the video, which Ms. Fowler said appeared to depict the sexual assault of a minor child. When Ms. Fowler said she did not want to watch the video, Defendant took what Ms. Fowler described as "a thumb drive" out of his phone and placed it in the console of the vehicle. Ms. Fowler stated that she never reported the incident to law enforcement because Defendant threatened her if she did so.

7. Detective Fucile then contacted state probation to report the information he learned from Ms. Fowler. Dennis Haislet is the probation officer assigned to Defendant. Officer Haislet decided to conduct a search at Defendant's residence for the "thumb drive." Detective Fucile had previously assisted Officer Haislet on inspections of Defendant's residence.

8. On March 18, 2016, Officer Haislet, accompanied by six other law enforcement officers, appeared at Defendant's residence to conduct the search.

9. During the search, law enforcement officers confiscated a laptop computer, SD card, which was described by Detective Fuclie as a small disk to be used with cell phones and computers, and a cell phone. They did not search any of the devices at the residence. Officer Haislet searched the SD card at his office, and the computer and phone were searched at the Bangor Police Department.

10. After Bangor police conducted a forensic search of the phone, federal law enforcement

officers obtained a search warrant for the phone and subsequently conducted a second data extraction from the phone.

11. Between the reported time Ms. Fowler observed Defendant viewing images on his phone in March 2015 and the date the items were confiscated (March 18, 2016), Officer Haislet had conducted probation searches of Defendant's residence, but had not observed a thumb drive. Officer Haislet had also previously searched Defendant's phone without detecting any child pornography.

12. Sometime in 2015, Officer Haislet had found pornographic images and searches for pictures of young girls on Defendant's phone. In May 2015, a search of Defendant's residence produced two computers. One of the computers contained images of child pornography, although there was some suggestion the computer belonged to someone else.

## DISCUSSION

Defendant contends the warrantless searches of the items were unlawful and, therefore, the evidence obtained as the result of the searches should be excluded at trial. (Motion at 5 – 12.) In addition, Defendant argues that because warrants for other searches were secured in part based on evidence obtained as the result of the warrantless searches, the evidence acquired pursuant to the subsequently-issued warrants should also be excluded. (*Id.* at 13 – 14.) The Government argues the searches were lawful because Defendant's probation conditions permitted law enforcement to conduct random searches of all "electronic equipment and storage media under his control." (Response at 10.)

4

Defendant's motion presents as the central issue whether law enforcement can conduct a suspicionless search of a probationer's property where the conditions of probation authorize such a search. In *United States v. Weikert*, 504 F.3d 1 (1st Cir. 2007), in which the First Circuit considered whether a state statute violated the Fourth Amendment where it required an individual on supervised release to provide a blood sample for purposes of creating a DNA profile, the First Circuit discussed the more recent relevant Supreme Court decisions:

> [I]n *United States v. Knights,* 534 U.S. 112 (2001), the Court did not apply the special needs doctrine [1] in upholding a warrantless search of a probationer that was supported by reasonable suspicion. Rather, the Court held that the search was reasonable "under [the] general Fourth Amendment approach of 'examining the totality of the circumstances.'" *Id.* at 118 (quoting *Ohio v. Robinette,* 519 U.S. 33, 39 (1996)). In explaining its decision, the Court noted that the probationer had signed a probation order agreeing to submit to a search of his person and property by a law enforcement officer "at any[ ]time, with or without a search warrant, warrant of arrest or reasonable cause." *Id.* at 114. Thus, the probationer's status informed both sides of the Fourth Amendment reasonableness balance. Probationers inherently have a decreased expectation of privacy, and the agreement to the search condition further decreased that expectation. *Id.* at 119–20. The government also has a greater interest in preventing recidivism, and is "quite justified" in concluding that a probationer "will be more likely to engage in criminal conduct than an ordinary member of the community." *Id.* at 121. The Court concluded that "the balance of these considerations requires no more than reasonable suspicion," ultimately holding that "the warrantless search ..., supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." *Id.* at 121–22.
>
> Most recently, in *Samson v. California,* 547 U.S. 843 (2006), the Court applied a totality of the circumstances analysis in upholding a *suspicionless* search of a

---

[1] "Special needs" are commonly cited in cases involving searches made pursuant to administrative programs that authorize random inspections and searches to promote public safety and security interests. Examples include prison searches, immigration checkpoints, sobriety checkpoints, baggage inspections, and searches performed to advance similar "special needs" of the Government. *Cassidy v. Chertoff*, 471 F.3d 67, 75 (2d Cir. 2006). "The so-called 'special needs' doctrine has been used to analyze searches in a variety of contexts where the government has neither obtained a warrant nor established individualized suspicion." *United States v. Weikert*, 504 F.3d 1, 6 (1st Cir. 2007).

parolee conducted pursuant to a California law stating that, as a condition for release, every prisoner eligible for state parole must agree to be subject to a search or seizure by a parole officer with or without a search warrant and with or without cause. After reiterating *Knights*'s holding that "probationers 'do not enjoy the absolute liberty to which every citizen is entitled,'" *id.* (quoting *Knights,* 534 U.S. at 119), the Court explained that, "[e]xamining the totality of the circumstances pertaining to petitioner's status as a parolee, ... including the plain terms of the parole search condition, ... petitioner did not have an expectation of privacy that society would recognize as legitimate," *id.* at 2199 (citations omitted). The Court also deemed the state's interests "substantial," citing the need to reduce recidivism and promote reintegration among those on conditional release. *Id.* at 2200. Given the number of parolees and the high likelihood of recidivism, "a requirement that searches be based on individualized suspicion would undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders." *Id.* at 2200–01. Thus, the Court concluded, "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Id.* 2196.

*Weikert*, 504 F.3d at 7 – 8 (footnote omitted) (emphasis in original).

Here, because Defendant's probation conditions explicitly authorize the random search of the items, and because Defendant agreed to the random search condition, under the *Samson* analysis, Defendant's reasonable expectation of privacy arguably was sufficiently reduced, if not eliminated, so as not to offend the Fourth Amendment.

Even if the search required reasonable suspicion, however, the search was lawful. At the time of the search, law enforcement (1) had the eye witness report that Defendant possessed a thumb drive or similar item that when connected to a phone displayed the sexual assault of a minor child, (2) had the eye witness report that Defendant had threatened harm to the eye witness and her family if she disclosed the information, (3) was aware that Defendant had previously viewed pornographic images on his phone, (4) was aware that Defendant

6

previously searched for pictures of young girls on his phone, (5) was aware that during a previous search, a computer containing child pornography was found in Defendant's residence, and (6) knew that the conviction for which Defendant was on probation was gross sexual assault of a young child under the age of 12. With this information, law enforcement had reasonable suspicion for the searches.

Defendant, however, argues that any suspicion was unreasonable because the information on which the search was based was stale. Defendant cites that the information was approximately a year old when law enforcement conducted the searches. (Motion at 11 – 12.)

When a court considers whether information is stale, the court "must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008). A court, therefore, does not "measure the timeliness of information simply by counting the number of days that have elapsed." *Id.* In *Morales*, the First Circuit affirmed the denial of a motion to suppress on staleness grounds, despite the passage of three years, where the warrant affiant explained that "customers of child pornography sites do not quickly dispose of their cache." *Id.* (collecting cases and observing the information was "not a new revelation"). In this case, given that information stored on electronic devices can remain on the devices for lengthy periods of time and is easily shared with other devices, the information upon which law enforcement based the searches was not stale.

In sum, while the searches are arguably lawful under the *Samson* analysis as suspicionless searches of the devices, the searches were supported by reasonable suspicion. Defendant's arguments in support of his motion to suppress, therefore, are unpersuasive.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court deny Defendant's motion to suppress.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of November, 2017.