UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:17-cr-00025-JAW |
| | ) | |
| DERRICK A. COFFIN | ) | |

# ORDER AFFIRMING RECOMMENDED DECISION ON DEFENDANT'S MOTION TO SUPPRESS

The Court affirms a recommended decision to deny a motion to suppress evidence of the Defendant's possession of child pornography on his electronic media. The Court concludes that the Defendant, who was on state probation at the time of the search, had expressly consented to such searches as a condition of his probation, that law enforcement had a reasonable suspicion to search his computers, and that, contrary to Defendant's contention, there is no "one search rule" that prohibits law enforcement from repeated, random searches of a sex offender's computer equipment, even though prior searches did not reveal the presence of illicit material.

## I. BACKGROUND

### A. Procedural History

On February 15, 2017, a federal grand jury indicted Derrick A. Coffin for three criminal law violations, each involving child pornography. *Indictment* (ECF No. 1). On April 26, 2017, Mr. Coffin filed a motion to suppress the results of a search of a Sony laptop, a Samsung cellphone, and an SD card removed from his house on March 18, 2016. *Def.'s Mot. to Suppress Searches* (ECF No. 28) (*Def.'s Mot.*). On May 17,

2017, the Government filed its opposition to the motion to suppress. *Gov't's Opp'n to Def.'s Mot. to Suppress* (ECF No. 33) (*Gov't's Opp'n*). On June 16, 2017, Mr. Coffin filed a reply. *Def.'s Reply to Gov't's Resp. to Mot. to Suppress* (ECF No. 41) (*Def.'s Reply*).

On October 24, 2017, the Magistrate Judge held an evidentiary hearing on the motion to suppress. *Tr. of Proceedings, Mot. Hr'g* (ECF No. 66) (*Tr.*). On November 22, 2017, the Magistrate Judge issued a recommended decision, recommending that the Court deny the motion to suppress. *Recommended Decision on Def.'s Mot. to Suppress* (ECF No. 63) (*Recommended Decision*). On December 6, 2017, Mr. Coffin filed an objection to the recommended decision. *Def.'s Obj. to Recommended Decision Denying Mot. to Suppress* (ECF No. 64) (*Def.'s Obj.*). On December 20, 2017, the Government responded to the Defendant's objection to the recommended decision. *Gov't's Resp. to Def.'s Obj. to Recommended Decision Denying Mot. to Suppress* (ECF No. 65) (*Gov't's Resp.*). On January 8, 2018, a transcript of the evidentiary hearing was filed. *Tr.*

### B. Factual Summary

#### 1. Derrick Coffin's Conviction, Sentence and Probation

On March 3, 2006, a Superior Court Justice for the state of Maine sentenced Derrick Coffin to fifteen years of incarceration with all but eight years suspended and ten years of probation for Gross Sexual Assault, a violation of 17-A M.R.S. § 253(1), a Class A crime; Burglary, a violation of 17-A M.R.S. § 401(1)(B)(4), a Class B crime; and Aggravated Criminal Trespass, a violation of 17-A M.R.S. § 402-A, a Class C

crime. *Gov't's Opp'n* Attach. 1 (*J. & Commitment*). Mr. Coffin's underlying crime was the rape of a young boy. *Tr.* 68:7-11. On October 5, 2012, Mr. Coffin began his probationary term with the state of Maine. *Id.* 45:22-24; *J. & Commitment* Attach. 3 (*Violation Review Form* at 2). On December 9, 2014, Mr. Coffin consented to a modification of his conditions of probation to include:

> Not view, listen to, or possess pornographic, sexually explicit, or provocative acts, performances, or materials in any form, and submit to random search of your person, residence, vehicles and all other spaces and materials, including electronic equipment and its storage and display mediums under your custody or control for evidence of such materials or activities.

*Id.* Attach. 4 (*Mot. to Amend the Conditions of Probation*).

### 2. Amanda Fowler and Derrick Coffin: January to March 2015

In January 2015, a woman named Amanda Fowler began to date Derrick Coffin. *Tr.* 16:19-24. She ended the relationship after about two months, roughly March 2015, when she found Mr. Coffin masturbating in his car while viewing child pornography. *Id.* 16:25-17:16. After Mr. Coffin had finished masturbating, Ms. Fowler saw him remove a thumb drive from his cellphone and place it in the console of the car. *Id.* 17:25-18:6. Ms. Fowler did not immediately report what she had witnessed to the authorities.

### 3. May 2015 to July 2015: The First Search

In May 2015, Mr. Coffin's Probation Officer (PO) was Dennis Haislet. *Tr.* On May 5, 2015, Mr. Coffin admitted to PO Haislet that he had viewed child pornography about six months after he had started on probation. *Tr.* 73:7-24; 74:11-20. However,

3

Mr. Coffin said that he had destroyed the disc that contained the child pornography. *Tr.* 73:20-24; 75:2-11. Nevertheless, on May 5, 2015, Mr. Coffin told PO Haislet that he had masturbated to sexual fantasies involving minors. *Tr.* 69:3-5.

Prompted by these revelations, PO Haislet initiated a probation search of Mr. Coffin's home in May 2015, including all of his computers. *Tr.* 75:21-76:15. The searching officers turned over Mr. Coffin's computer equipment to officers from the Maine State Crime Lab. *Tr.* 76:6-77:2. The searching officers did not, however, look for thumb drives or other removable media. *Tr.* 77:3-11. The Maine State Crime Lab officers performed on on-site check of Mr. Coffin's computer equipment and found child pornography on one of the computers.[1] *Id.* 77:15-18. The Maine State Crime Lab did not find any child pornography on Mr. Coffin's other home computer or on his cellphone. *Tr.* 78:7-82:2. Based on some questionable searches on his cellphone (for example, young cheerleaders) and some self-produced adult pornography, in July 2015, PO Haislet confronted Mr. Coffin about his use of the cellphone, warned him, but did not violate him. *Id.* 79:4-12; 80:15-81:17.

### 4. Amanda Fowler, Derrick Beal and Derrick Coffin

In March 2016, Detective Mark Fucile of the town of Lincoln, Maine Police Department maintained a fake Facebook account in an attempt to monitor activity in the Lincoln, Maine area. *Tr.* 7:16-8:16. On March 7, 2016, a man named Derrick Beal posted a comment on Facebook.com stating that a pedophile in Lincoln named

---

[1] It appears that there was uncertainty as to whether the computer containing child pornography in May 2015 was in fact Mr. Coffin's. *Tr.* 78:14-17. In any event, he was not violated for the child pornography on that computer.

Derrick Coffin had stolen Mr. Beal's Facebook account. *Id.* 9:6-9; *Gov't's Opp'n* Attach. 5 *Fucile Police Report*, at 1-2 (*Fucile Police Report*). Detective Fucile contacted Mr. Beal by telephone shortly thereafter—likely March 8, 2016. *Tr.* 10:6-19. Detective Fucile learned that Mr. Beal's girlfriend was Amanda Fowler and that she had had her Facebook account hacked and had reported it to the Maine State Police. *Tr.* 13:4-11. Mr. Beal provided Detective Fucile with Amanda Fowler's telephone number. *Tr.* 13:6-11. Detective Fucile called Amanda Fowler and spoke to her. *Tr.* 7-10.

Amanda Fowler told Detective Fucile that she had formerly dated Derrick Coffin in January 2015 and had continued to do so for a couple of months. *Tr.* 16:19-17:2. Ms. Fowler told Detective Fucile that she had broken off her relationship with Mr. Coffin because, in March 2015, she had witnessed Mr. Coffin looking at child pornography on his cellphone while masturbating. *Tr.* 17:3-16. She also told Detective Fucile that after he had finished, Mr. Coffin had taken a thumb drive out of his cellphone and placed it in the car console. *Tr.* 17:20-18:6. Ms. Fowler also told Detective Fucile that the video contained what looked to her like a three-month-old baby being raped. *Fucile Police Report* at 2. She explained that she had not come to the police before because Mr. Coffin had told her that if she told anyone, "he would rape her children." *Id.* at 2.

### 5. The March 18, 2016 Search and Seizure

After receiving this information, Detective Fucile contacted Maine State Trooper Bagley and PO Haislet. *Tr.* 19:2-8. On March 18, 2016, Detective Fucile, PO

5

Haislet, and other law enforcement officers conducted a probation check on Mr. Coffin. *Fucile Police Report* at 1. Two of the reasons for the search were to see if law enforcement could locate any thumb drives in Mr. Coffin's home and to check on his computers and electronic media. *Tr.* 27:4-14. The searchers located a laptop computer, a cellphone, and an SD card, and the officers removed them from Mr. Coffin's home. *Tr.* 23:23-24:1. The searchers did not obtain a search warrant for the March 18, 2016 search and seizure. *Tr.* 33:18-25.

## II. THE PARTIES' POSITIONS

### A. Derrick Coffin's Motion to Suppress

Mr. Coffin moved to suppress the results of the warrantless searches of his electronic media on the ground that the searches were unconstitutional. *Def.'s Mot.* at 5. Citing *United States v. Knights*, 534 U.S. 112 (2001), Mr. Coffin states that to perform a warrantless search of a probationer, law enforcement must have a reasonable suspicion. *Def.'s Mot.* at 6 (citing *Knights*, 534 U.S. at 121). Mr. Coffin urged the Court to adopt the view of the Fourth Circuit, which he contends "finds such warrantless searches based on a 'reasonable suspicion' categorically unconstitutional." *Id.* (citing *United States v. Hill*, 766 F.3d 243 (4th Cir. 2015)). He also urged the Court to conclude that the actual search went beyond the scope of the amended probation conditions. *Id.* at 10. Mr. Coffin further argued that law enforcement did not have reasonable suspicion to conduct the search of the electronic devices because the information from Amanda Fowler was stale and because law enforcement had conducted a search of Mr. Coffin's electronic media after the March

6

2015 masturbation incident and had found no child pornography. *Id.* at 11-13. Finally, he contended that the Court should rule the subsequent warranted searches unconstitutional because they relied on information produced during the warrantless searches. *Id.* at 13-14.

B.     **The Government's Opposition**

The Government opposed Mr. Coffin's motion to suppress contending that law enforcement had a reasonable suspicion of new criminal conduct in light of all the circumstances. *Gov't's Opp'n* at 6-8. Citing *United States v. Graham*, 553 F.3d 6, 15, 18 (1st Cir. 2009), the Government wrote that the First Circuit has adopted the *Knights* standard for evaluating warrantless searches of probationers. *Id.* at 8-9. Viewing all the circumstances here, the Government contended that the Coffin search was based on reasonable suspicion consistent with the strictures of First Circuit precedent. *Id.* at 9-11. The Government also maintained that Mr. Coffin himself had consented to the search of his electronic media and that no cause was needed under his probation conditions. *Id.* at 12-13. Furthermore, the Government noted that Ms. Fowler had observed Mr. Coffin using a removable electronic device to access child pornography and that Ms. Fowler's information was not stale. *Id.* at 13-15. The Government also argued that law enforcement could rely on the probation search condition in good faith. *Id.* at 16. Finally, the Government contended that Mr. Coffin has failed to particularize any taint in any subsequent warrant. *Id.* at 17.

C.     **Darrick Coffin's Reply**

7

In his reply, Mr. Coffin reiterated his contention that there was no reasonable suspicion for the Government to search his computers. *Def.'s Reply* at 2-6. Mr. Coffin also denied that he consented to the search. *Id.* at 6-7. Mr. Coffin disputed whether the good faith exception under *United States v. Leon*, 468 U.S. 897, 920 (1984) applies to this case. *Id.* at 8.

### III. THE RECOMMENDED DECISION

In the recommended decision dated November 22, 2017, the Magistrate Judge made numerous specific findings based on the evidence presented at the suppression hearing. *Recommended Decision* at 1-4. The Magistrate Judge quoted extensively from the First Circuit case of *United States v. Weikert*, 504 F.3d 1 (1st Cir. 2007), which discussed not only *Knights* but also *Samson v. California*, 547 U.S. 843 (2006). The Magistrate Judge wrote that "because Defendant's probation conditions explicitly authorize the random search of the items, and because Defendant agreed to the random search condition, under the *Samson* analysis, Defendant's reasonable expectation of privacy arguably was sufficiently reduced, if not eliminated, so as not to offend the Fourth Amendment." *Id.* at 6.

The Magistrate Judge further concluded that even if the search required reasonable suspicion, "the search was lawful." *Id.* The Magistrate Judge carefully reviewed the information known to law enforcement and concluded that they had reasonable suspicion to search his computer equipment. *Id.* The Magistrate Judge rejected the Defendant's argument that the information was stale, noting that in *United States v. Morales-Aldahondo*, 524 F.3d 115 (1st Cir. 2008), the First Circuit

8

wrote that "customers of child pornography sites do not quickly dispose of their cache." *Id.* at 7 (quoting *Morales-Aldahondo*, 524 F.3d at 119).

## IV. THE OBJECTION AND RESPONSE

### A. Derrick Coffin's Objection

Although Mr. Coffin objected for all the reasons in his original motion, in his objection to the recommended decision, Mr. Coffin focused on the Magistrate Judge's failure to address the fact that in May 2015, law enforcement conducted a search of the Defendant's computer and found no child pornography. *Def.'s Obj.* at 1-2. Mr. Coffin observed that Amanda Fowler saw him masturbate to child pornography before the May 2015 search of his computer. *Id.* at 2. Therefore, Mr. Coffin reasons, pre-May 2015 activity could not provide a reasonable suspicion to search Mr. Coffin's computers a second time in March 2016. *Id.* In his view, any reasonable suspicion would have "evaporate[d]." *Id.*

### B. The Government's Response

The Government responds that the fact the May 2015 search did not reveal any child pornography does not negate a reasonable suspicion of the existence of child pornography in March 2016. *Gov't's Resp.* at 2. In the Government's view, simply because the child pornography was not found in May 2015 does not mean it would not be there in March 2016. *Id.* Furthermore, the Government says that the fact that law enforcement learned that Mr. Coffin was using a flash drive to store child pornography gave them greater reason to suspect that he was using his computer to access child pornography. *Id.* Additionally, Mr. Coffin's known use of a flash drive

9

to store child pornography prior to the May 2015 search—because those devices can be easily inserted and removed from a computer at any time before or after a search—was an additional reason to suspect that Mr. Coffin might have continued to possess child pornography even though none was found during that May 2015 search. *Id.*

V. **DISCUSSION**

    A. **Defendant's Contention About Limit on Number of Searches Based on Same Information is Meritless**

Mr. Coffin's objection to the recommended decision is premised on the odd notion of a "one-search rule": that law enforcement is entitled to search a probationer's computer equipment once—and once only—and if that search reveals nothing, law enforcement is barred from searching the computer equipment again solely on the basis of the same information that gave rise the original reasonable suspicion that led to the first search. Mr. Coffin cites no authority for the "one-search rule," and the Court is aware of none. Instead, Mr. Coffin's proposition is contrary to his own agreed-to probation conditions, Supreme Court and First Circuit law on searches pursuant to probation conditions, the facts in this case, and common sense.

In his amended probation conditions, Mr. Coffin agreed "[n]ot to view, listen to, or possess pornographic, sexually explicit, or provocative acts, performances, or materials in any form." *Amended Prob. Conditions* at 1. He further specifically agreed to "submit to random search of your person, residence, vehicles and all other spaces and materials, including electronic equipment and its storage and display mediums under your custody or control for evidence of such materials or activities." *Id.* This probation condition expressly authorizes the probation office to randomly

10

search Mr. Coffin's computer equipment, and is wholly inconsistent with Mr. Coffin's current contention that the probation office is allowed to search only once without specific additional information constituting new grounds for reasonable suspicion.

> **B.** **Totality of the Circumstances Indicate Defendant Had No Reasonable Expectation of Privacy**

In fact, as the Magistrate Judge noted, in *Weikert*, the First Circuit quoted *Samson* as stating that "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." 504 F.3d at 8 (quoting *Samson*, 547 U.S. at 847). The *Weikert* Court further quoted *Samson* as saying that it was necessary to examine "the totality of the circumstances pertaining to the petitioner's status as a parolee, . . . including the plain terms of the parole search condition" to determine whether the probationer had "an expectation of privacy that society would recognize as legitimate." *Weikert*, 504 F.3d at 8 (quoting *Samson*, 547 U.S. at 852).

The totality of the circumstances in this case includes that Mr. Coffin had committed gross sexual assault against a young boy, a Class A felony under Maine law, that under the terms of his state probation, he was prohibited from possessing pornographic material and was subject to a random search condition in the terms of his probation. It is difficult, in these circumstances, to understand why Mr. Coffin would contend that he had a reasonable expectation of privacy in the contents of his electronic media or that society would view as legitimate his assertion of the right of privacy in his computers. This is especially true given the First Circuit's discussion

11

in *Morales-Aldahondo* of the nature of the caches of pornographic material often sequestered by customers of child pornography.

### C. Although Not Required, Basis for Reasonable Suspicion Present

Even assuming arguendo that the PO was required to have a reasonable suspicion before inspecting his computers, the Magistrate Judge listed six factors in Mr. Coffin's case that would have given law enforcement reasonable suspicion to search his computers, even though the May 2015 search revealed no child pornography: (1) an eyewitness report that Mr. Coffin possessed a thumb drive or similar item that, when connected to a cellphone, facilitated display of the sexual assault of a baby, (2) an eyewitness report that Mr. Coffin had threatened harm to her and her family if she disclosed the information, (3) law enforcement was aware that Mr. Coffin had previously viewed pornography on his cellphone, (4) law enforcement was aware that he had previously searched for young girls on his cellphone, (5) law enforcement was aware that, during a previous search, a computer that contained child pornography was found in his residence, and (6) law enforcement knew that Mr. Coffin was on probation for the gross sexual assault of a young child under the age of twelve. *Recommended Decision* at 6-7.

To these facts, the Court adds (7) that law enforcement learned that Mr. Coffin had hacked into the Facebook accounts of Amanda Fowler and Derrick Beal; (8) that law enforcement learned that Mr. Coffin had masturbated while viewing the video of a rape of a baby in front of Amanda Beal, his then girlfriend, (9) that on July 14, 2015, he had used his cellphone to record a consensual sexual encounter with a female to

12

send to their mutual friend on a website, *Violation Review Form* at 2, and (10) that he was issued a warning after watching pornography for two days. *Id*.

Of these additional facts, it is significant for purposes of reasonable suspicion that on March 18, 2016, law enforcement learned that Mr. Coffin had hacked into Mr. Beal's and Ms. Fowler's Facebook accounts. This new fact revealed that Mr. Coffin possessed a high level of sophistication with computing and the Internet that would lead a reasonable officer to suspect that the May 2015 computer search may have missed something that Mr. Coffin had managed to hide on his computer or may have placed on a removable device like a flash drive.

It is also significant that Mr. Coffin had been acting more and more out of control sexually. Masturbating while viewing the rape of a baby while in front of his then girlfriend is outside any norm of behavior. Mr. Coffin not only acted in this fashion despite the presence of his girlfriend, he also threatened to harm her and her family if she revealed his actions, a threat she obviously took seriously because she did not reveal this information to law enforcement for nearly one year. Videotaping a consensual sexual encounter and placing it on the Internet and watching pornography for two days, all combine to strongly suggest that by March 2016, Mr. Coffin was sexually acting up and engaging in increasingly risky behavior. Given the age of the victim of his gross sexual assault, law enforcement's concern to protect young children also justifies not only the random search condition, but also the reasonableness of law enforcement's suspicions, leading to the search Mr. Coffin's computers with an intention to look for any flash drives or similar media.

In short, the Court agrees with the Magistrate Judge that the conditions of Mr. Coffin's probation, which allowed for random searches of his computers, allowed for the March 2016 searches of Mr. Coffin's computers. The Court also agrees with the Magistrate Judge's conclusion that in the totality of the circumstances, including the search condition, there is no Fourth Amendment violation in this case. Finally, the Court rejects Mr. Coffin's contention that the May 2015 search precludes a subsequent search and, even if it did, that by March 2016, law enforcement had gained new information about the nature and scope of Mr. Coffin's activity that satisfied the Supreme Court's and First Circuit's reasonable suspicion standard.

## VI. CONCLUSION

Having performed a de novo review of the Magistrate Judge's recommended decision, the Court AFFIRMS the recommended decision (ECF No. 63) for the reasons set forth in the recommended decision and for the reasons set forth in this order. The Court OVERRULES the Defendant's Objection to Recommended Decision Denying Motion to Suppress (ECF No. 64) and DENIES the Defendant's Motion to Suppress Searches (ECF No. 28).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of February, 2018